AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

FILED

JAN 17 2013

MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

United States of America            )
                                     )
v.                                   )          Case No.   13-M- 2017
                                     )
NICHOLAS MUSSOLINI a/k/a Nicole Mussolini    )
                    *Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about January, 2012 and the present, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant did:

knowingly devise a scheme to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, and did transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds in furtherance of the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

This criminal complaint is based on these facts:

☐      SEE ATTACHED AFFIDAVIT

✔   Continued on the attached sheet.

_____
*Complainant's signature*

Allan Rains, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 17 , 2013   10:42 Am

_____
*Judge's signature*

City and State:  Buffalo, New York

HON. HUGH B. SCOTT, United States Magistrate Judge
*Printed name and title*

STATE OF NEW YORK   )
COUNTY OF ERIE      )  SS:
CITY OF BUFFALO     )

Allan Rains, being duly sworn, deposes and says:

## INTRODUCTION AND AGENT BACKGROUND

1.    I am a Special Agent of the Federal Bureau of Investigation
(FBI) and have been so employed for more than eleven years.   I am
currently assigned to the Buffalo Field Office and to the White Collar
Crime Squad within that office.   My duties include the investigation
of such offenses as public corruption, investment fraud, money
laundering, bank fraud, corporate fraud, mail fraud, wire fraud and
other white collar crimes.   The FBI is an agency within the United
States Department of Justice, which is a department within the
executive branch of the United States Government.

2.    I make this Affidavit in support of an application for a
Criminal Complaint charging Nicholas Mussolini ("MUSSOLINI"), also
known as Nicole Mussolini, with knowingly devising a scheme to
defraud and to obtain money by false and fraudulent pretenses,
representations, and promises, and transmitting and causing to be
transmitted by means of wire communication in interstate commerce,
certain writings, signs, signals, pictures and sounds for the purpose

of furthering the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

3.     Because this Affidavit is submitted for the purpose of establishing probable cause to support the issuance of a Criminal Complaint, I have not included each and every fact known by the government concerning this investigation.   This Affidavit includes information known to your Affiant and information provided to your Affiant by Victim #1 and Victim #2 and other witnesses and law enforcement officials.

## DETAILS OF INVESTIGATION

4.     This investigation was initiated by the Federal Bureau of Investigation (FBI) in October 2012 based upon a complaint received from an individual, hereafter referred to as Victim #1.   According to Victim #1, in early 2012, an individual, hereafter referred to as P.W., referred him to MUSSOLINI because Victim #1 was entering into a business venture and needed a loan of approximately $10 million.   P.W. is the owner of a company called Mone't Funding. MUSSOLINI represented that he was owner of Preston Waters Corporation (PWC), and MUSSOLINI told Victim #1 that PWC could obtain the $10 million loan for Victim #1's venture.   Initially, MUSSOLINI advised that he would need $750,000 as an advance fee to close on the loan.

-2-

Victim #1 did not have $750,000 and ultimately MUSSOLINI agreed to accept $150,000 as an initial deposit to secure the first $1.5 million of the $10 million loan proceeds.  Victim #1 agreed that once the $1.5 million was received, he would use it to pay the remaining $600,000 advance fee to MUSSOLINI.

5.   On January 30, 2012, MUSSOLINI sent multiple documents via e-mail to Victim #1 that included a document titled "Transaction Summary" and a document titled "Guarantee and Indemnity".  I have reviewed both documents which were both created on PWC letterhead and signed by MUSSOLINI.  The "Transaction Summary" states that Victim #1 "shall commit to the deposit in this transaction totaling Seven Hundred Fifty Thousand United States Dollars ($750,000 USD) to cover payment for the opening of the account, management, and investment purposes related to the agreed upon project".  The "Guarantee and Indemnity" document states that the deposited funds were "to be applied towards the pre-approved costs of acquiring and setting up the collateral and the investment structure".

6.   In March 2012, Victim #1 made arrangements for $150,000 to be transferred to MUSSOLINI, and MUSSOLINI caused to be transferred by wire, $150,000 from the bank account of Victim #1's attorney in the state of Tennessee to a bank account controlled

-3-

by MUSSOLINI at First Niagara Bank located in the Western District of New York.   After providing the $150,000 to MUSSOLINI, the promised loan was never funded by MUSSOLINI.   Over the course of time, Victim #1 eventually learned of other clients involved in similar loan transactions with MUSSOLINI and communicated with some of those individuals.   Based on these communications, Victim #1 concluded that none of the similar loan transactions had ever funded.

7.   Over time, MUSSOLINI represented to Victim #1 that he had offices located in New York City, Texas and California.   Victim #1 has since learned that MUSSOLINI is the only person in PWC, and his office in New York City is a virtual office.   MUSSOLINI also has a company website located at www.preston-waters.com.   From approximately January 2012 to at least September 8, 2012, Victim #1 has consistently communicated with MUSSOLINI both telephonically and via e-mail.

8.   Similar to Victim #1, an individual, hereafter referred to as Victim #2, was introduced to MUSSOLINI by P.W. in February 2012, when Victim #2 was in the process of entering into a business venture and needed to obtain a loan related to this venture.   The communication between Victim #2 and MUSSOLINI began in approximately February, 2012, and was generally done over the telephone and via

– 4 –

e-mail.   Victim #2's loan for his business venture was to be for an amount in excess of $11 million.   In Victim #2's case, the deal was attractive because it was an "equity deal".   Victim #2 was to receive the loan and there would be no monthly payments.   MUSSOLINI was going to take 75% of the business venture's profits until the loan was paid off.   In addition, MUSSOLINI was going to take 50% of the business venture's profits for three years after the loan was paid off. Victim #2 ultimately agreed to provide MUSSOLINI with a $458,000 deposit to secure the funding.

9.   In February 2012, Victim #2 transferred by wire $458,000 to First American Commercial Escrow in Texas, and made arrangements for this money to be transferred to MUSSOLINI.   On March 7, 2012, MUSSOLINI caused to be transferred by wire approximately $451,000 from the account of First American Commercial Escrow to a bank account controlled by MUSSOLINI at First Niagara Bank, located in the Western District of New York.   This wire transfer was made up of Victim #2's funds, less the escrow agent's fee.   Victim #2 did instruct the escrow agent to release the funds to MUSSOLINI because at the time he understood the funding promised by MUSSOLINI was forthcoming once the escrow funds were released.   Victim #2 believed the entire amount of the escrow funds was to be used to purchase the financial instrument necessary to fund the business venture.   Victim #2

-5-

advised that MUSSOLINI provided him with a "Guarantee and Indemnity"
agreement as an attachment to an e-mail sent from MUSSOLINI to Victim
#2 on February 28, 2012.   I have reviewed the agreement, which states
that the deposited funds were "to be applied towards the pre-approved
costs of acquiring and setting up the collateral and the investment
structure".   Victim #2 confirmed that the "Guarantee and Indemnity"
agreement accurately reflects what he believed the terms of his
"deal" with MUSSOLINI to be.   Victim #2 did note that MUSSOLINI
returned $150,000 of the deposit, but neither MUSSOLINI nor his
companies ever funded the loan as promised, and Victim #2 is still
out approximately $308,000.


10.   According to Victim #2 and the language of the "Guarantee
and Indemnity" agreement provided to Victim #2 by MUSSOLINI, the
funds provided by Victim #2 were to be applied towards the
pre-approved costs of acquiring and setting up the collateral and
the investment structure, and therefore, MUSSOLINI was not
personally entitled to any of the money and was not entitled to make
any personal purchases with the money.   MUSSOLINI was to be paid a
specific percentage from the loan proceeds once the loan was
funded.   The deposit money was to be returned if the deal did not
fund.   To date, it has not been returned.

11. Between on or about September 8, 2011 and October 2012, MUSSOLINI maintained three business bank accounts at First Niagara Bank in the Western District of New York. According to records reviewed from First Niagara Bank, as of October 4, 2012, each of the three MUSSOLINI bank accounts maintained an overdrawn balance, and the bank accounts have since been closed by First Niagara Bank. The three First Niagara Bank accounts are listed and detailed in the Table set forth below:

| Date Account Opened | Account Number (redacted) | Name of Account Holder | Authorized Signers |
|---|---|---|---|
| 09/08/2011 | 5932 | Preston Waters VT Holdings LLC | Nicholas Mussolini |
| 10/21/2011 | 5221 | Nicholas Preston Inc. | Nicholas Mussolini |
| 01/10/2012 | 5445 | Preston Waters Corporation | Nicholas Mussolini |

12. I have reviewed documents related to the three bank accounts maintained at First Niagara Bank in the names of the three entities listed in the chart above. MUSSOLINI is the authorized signer on all three of these bank accounts. Through analysis of the account records, I have learned that between September 30, 2011 and March 14, 2012, incoming wire transfers into these MUSSOLINI controlled bank accounts amounted to more than $1,285,000. Approximately $1,094,000 of the incoming wire transfers were received in three separate wire transfers between March 5, 2012 and

- 7 -

March 14, 2012.   The incoming wire transfer on March 14, 2012 was

for the aforementioned $150,000 from the bank account of the attorney

for Victim #1.   The other two wire transfers were received on March

5, 2012 and March 7, 2012 from the bank account of First American

Commercial Escrow located in Texas, and total approximately $493,000

and $451,000, respectively.   The wire transfer for approximately

$451,000, as noted above, was from funds belonging to Victim #2.   The

wire transfer for approximately $493,000 appears to be from another

victim who has not been interviewed to date.   None of the incoming

wire transfers into the MUSSOLINI controlled bank accounts appear

to be proceeds of loans.


     13.   The analysis of these same bank accounts at First Niagara

Bank revealed that MUSSOLINI made over 500 debit card purchases and

other ACH transactions totaling in excess of $200,000 with the

incoming funds from the aforementioned wire transfers.   The debit

card purchases and other ACH transactions primarily appear to be

personal in nature and were made in several states, including New

York.   Many of the New York purchases were made in the Western

District of New York.   MUSSOLINI also wire transferred in excess of

$72,000 to Preston Waters Entertainment and/or an employee of Preston

Waters Entertainment and wire transferred in excess of $20,000 to

an individual who will be referred to as J.M., who is believed to

$- 8 -$

be a family member of MUSSOLINI.   It should be noted that the victims interviewed to date understood their funds were to be used to originate their loans and were not to be profit or payment for MUSSOLINI and/or his companies.   MUSSOLINI was to be paid a specified percentage from the loan proceeds funded to his clients.

14.   The analysis of the bank accounts at First Niagara Bank further revealed that in March 2012, approximately $115,000 was transferred by wire to individuals and/or entities who appear to be related to funds which were originally wire transferred to MUSSOLINI in September and October 2011.   Based on my training and experience, I believe these individuals and/or entities are additional victim clients of MUSSOLINI.   The funds returned to these individuals and/or entities were from the aforementioned $1,094,000 received by MUSSOLINI between March 5, 2012 and March 14, 2012 (referenced in Paragraph 12 above).   In addition, MUSSOLINI returned approximately $380,000 to other individuals and/or entities who are known or believed to be victim clients of MUSSOLINI, including $5,000 to Victim #1 and $150,000 to Victim #2.   Based on my knowledge, experience and training, I know that payments of this nature are typical in a "Ponzi" type fraud scheme.   These payments are often made to pacify investors, or in  this  case,  individuals and/or entities who were required to pay advance fees for loans, the funding

— 9 —

for which was never realized.

15.  In  addition  to  the  aforementioned  "Guarantee  and Indemnity" and "Transaction Summary" documents, I have also reviewed a "Joint Venture Account Agreement" between GGH America, Inc. and PWC that was provided to Victim #2 by MUSSOLINI.  In this agreement, GGH America, Inc. "warrants that it will provide SBLC availability, and in hard copy form, on its Account with a minimum balance of $100,000,000.00".  It should be noted that MUSSOLINI did wire transfer $175,000 from First Niagara Bank to a bank account belonging to GGH America, Inc, prior to the receipt of Victim #1 and Victim #2's funds.  This transaction does not negate MUSSOLINI's attempt to defraud Victim #1 and Victim #2, in that MUSSOLINI represented to Victim #1 and Victim #2 that their respective "payments" of $150,000 and $458,000 would be applied in their entirety towards a down  payment  for  their  portion  of  the  $100,000,000  loan. Furthermore, investigation to date has not revealed any successful funding of loan transactions by MUSSOLINI.  In email communication dated October 29, 2012, with Victim #2, MUSSOLINI responded to Victim #2's questions regarding the funds which were to be used to secure the  financial  instrument.   MUSSOLINI's  response  included  the following:  "So to answer your question, no - we do not just 'spend it'.  It has been invested accordingly and we have already requested

−10−

our refund back 2 weeks ago when we found out that the issuing bank was still giving our provider a hard time finishing the transaction, and at this point we want nothing to do with that bank right now." MUSSOLINI failed to tell Victim #2 that the majority of the funds received by MUSSOLINI had been spent and/or distributed to other victim clients.

WHEREFORE, in consideration of the foregoing, it is respectfully requested that this Court issue a Criminal Complaint charging Nicholas MUSSOLINI, also known as Nicole MUSSOLINI, with knowingly devising a scheme to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, and transmitting and causing to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds for the purpose of furthering the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Allan Rains
Special Agent
Federal Bureau of Investigation

Sworn to before me this 17 day of January, 2013.

HUGH B. SCOTT
United States Magistrate Judge

- 11 -